UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A<small>NTHONY</small> A<small>SHLEY</small>,

   Plaintiff,            Hon. Janet T. Neff

v.                    Case No. 1:19-cv-38

C<small>OMMISSIONER OF</small> S<small>OCIAL</small>
S<small>ECURITY</small>,

   Defendant.
_____/

**<u>REPORT AND RECOMMENDATION</u>**

  This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## **STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Secretary of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Specifically, the Court is limited to assessing whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). When assessing the substantiality of the evidence, the Court must consider the evidence as a whole and take into account whatever in the record fairly detracts therefrom. *See Richardson v. Secretary of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). The

substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the Commissioner considerable latitude and mandates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. See *Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was forty years of age on his alleged disability onset date. (PageID.229). He successfully completed high school and worked previously as a store laborer. (PageID.73). Plaintiff applied for benefits on September 12, 2015, alleging that he had been disabled since December 31, 2012, due to arthritis, diabetes, diverticulitis, and prostatitis. (PageID.229-41, 261).

Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.140-227). On November 8, 2017, Plaintiff appeared before ALJ Michael Condon with testimony being offered by Plaintiff and a vocational expert. (PageID.82-138). In a written decision dated March 21, 2018, the ALJ determined that Plaintiff was not disabled. (PageID.63-75). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.35-40). Plaintiff subsequently initiated this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2012. (PageID.66). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual

functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) insulin-dependent diabetes mellitus with evidence of peripheral neuropathy; (2) bilateral knee osteoarthritis; (3) degenerative disc disease of the lumbosacral spine with a small disc protrusion at the L5-S1 level; and (4) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.66-68).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he can lift/carry up to ten pounds; (2) during an eight-hour workday, he can sit for six hours and stand/walk for two hours; (3) he requires a sit/stand option; (4) he can only frequently rotate his head or neck; (5) he can occasionally balance, stoop, crouch, and climb ramps or stairs; (6) he cannot kneel, crawl, or climb ladders, ropes, or scaffolds; (7) he cannot operate leg or foot controls bilaterally; and (8) he cannot ambulate over uneven terrain. (PageID.69).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy

which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 155,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.130-37). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

### I. Medical Evidence

In addition to the testimony presented at the administrative hearing, the administrative record contains copies of Plaintiff's statements and medical treatment records. The ALJ described this evidence as follows:

The undersigned reviewed the medical evidence. An x-ray taken in 2015 revealed mild degenerative disc disease in the claimant's lumbar spine (9F/6). In December 2015, the claimant complained of back pain that radiated to his right leg (19F/2). On exam, the claimant's spine was tender to palpation and his range of motion was slightly reduced in his lumbar spine (19F/5). The claimant rated the pain as a 5/10 (19F/2). However, the claimant had no spasms in his back and he had a negative straight leg raise test (19F/4). At another exam that month, the claimant had normal musculoskeletal strength and a negative straight leg raise test (18F/122).

In January 2016, the claimant attended a consultative examination where he reported back pain (10F). On examination, his straight leg raise test elicited pain at thirty degrees (10F/2). The claimant's flexion in his lumbar spine was also reduced (10F/3). Still, on exam, the claimant's musculoskeletal strength was normal (10F/2). The claimant complained of back pain at another exam that month (18F/116). However, the claimant had normal strength on exam and was able to walk around on his own throughout the stay (18F/116). In July 2017, the claimant's spine was tender to palpation (18F/8). However, he had full strength in his lower extremities and ambulated without difficulty (18F/8, 15).

In August 2017, the claimant again complained of low back pain (18F/3, 20F/1). The claimant's lumbar spine was tender to palpation; however, the claimant had full range of motion (18F/4). Additionally, the claimant had normal musculoskeletal strength and a negative straight leg raise test (18F/4). Diagnostic imaging taken in September 2017 of the claimant's lumbar spine revealed a small central disc protrusion at the L5-S1 level superimposed in a generalized bulge of the L5-S1 disc with associated moderate bilateral recess and neural foraminal stenosis (20F/2). However, there was no central canal stenosis (20F/2). At that time, the claimant reported that physical therapy completely resolved his back pain; however, it eventually returned on an intermittent basis (20F/3). On exam, the claimant had no difficulty going from a seated to standing position (20F/3). The claimant's musculoskeletal strength in his lower extremities was intact (20F/3). The provider indicated that there were no signs of nerve root irritation (20F/3). Additionally, the claimant had a negative straight leg raise test (20F/3).

Concerning his knees, diagnostic imaging of the claimant's knees revealed bilateral osteoarthritis (2F/1). The osteoarthritis was more pronounced on the right with two loose bodies projecting both anterior and posterior to the lateral femoral condyle (2F/1). In January 2013, the claimant complained of knee pain (3F/86). On exam, the claimant's right knee was swollen and he had reduced range of motion (3F/88). In April and July 2014, the claimant walked with a limp (3F/56, 58). The claimant's right knee was warm and swollen (3F/58). However, the claimant was full weight bearing without any assistive devices (3F/58).

In January 2015, the claimant again reported right knee pain (17F/117). The claimant had some crepitus with his range of motion in his right knee (17F/117). However, the claimant was able to bear weight and get up and down from the exam table without assistance (17F/117). In May 2015, the claimant again reported right knee pain; however, his knee was normal on exam (3F/18). In October 2015, the claimant had a normal gait (19F/16). In December 2015, the claimant had slightly reduced range of motion in his knees; however, he had a normal gait (19F/4, 5). At another exam that month, the claimant had a steady gait (18F/122).

In January 2016, the claimant attended a consultative examination (10F). At that exam, the claimant reported that he had been getting injections in his knees since 1998 (10F/1). The claimant indicated that his doctor spoke to him about a possible knee arthoplasty, but that he could not have the surgery until he loses weight (10F/1). The claimant complained of knee pain when walking (10F/1). The examiner noted that the claimant had a wide-based waddling gait, which was affected by his morbid obesity (10F/2). The claimant's knee flexion was also reduced bilaterally (10F/3). Still, the claimant was able to ambulate without any assistive devices (10F/2). There were no effusions or crepitus noted in the claimant's knee joints (10F/2).

In March 2016, the claimant had a normal gait (17F/234). In June 2016, the claimant received a steroid injection in his right knee and in July 2016, the claimant received a steroid injection in his left knee (17F/206). Also in July 2016, the claimant's range of motion in his knees was limited by his habitus (17F/214). The claimant had pain with range of motion in his right knee, but no pain in his left knee (17F/214). At that time, the claimant was referred to physical

-8-

therapy (17F/216). The claimant again complained of right knee pain in September 2016 and had a reduced range of motion in his right knee on exam (17F/205).

In October 2016, the claimant received a steroid injection in his left knee and reported that a prior injection in his right knee provided relief for only a few days (17F/197). By June 2017, the claimant had a normal gait (17F/141). In August 2017, the claimant complained of bilateral knee pain (20F/1). In September 2017, the claimant noted a possibility of getting knee replacements (20F/3). Still, the claimant had a stable gait on exam (20F/3).

The record also demonstrates evidence of obesity. During the period at issue, the claimant was six feet one inch tall and weighed about 387 pounds (10F/2, 19F/10). This equates to a Body Mass Index (BMI) of 51.1. Pursuant to SSR 02-lp, a BMI greater than 40.0 is indicative of Level III obesity. The claimant's obesity was considered in terms of its possible effects on the claimant's ability to work and ability to perform activities of daily living. As previously discussed, the claimant had normal musculoskeletal strength at multiple exams (1F/32, 10F/2, 18F/4, 8, 16, 116, 122, 20F/3). Additionally, there does not appear to be a significant impact on his respiratory or cardiovascular system as examinations generally showed clear lungs and normal heart rate and rhythm *(See* 9F/2, 18F/4, 17F, 20F/3).

The claimant also has insulin-dependent diabetes mellitus with evidence of peripheral neuropathy (17F/46, 18F/14). Initially, the claimant had improved blood sugar readings that were less than 140mg/dL (11F/2, 17F/235). However, the claimant's blood sugar readings became more elevated, ranging from 377mg/dL to 548mg/dL (18F/18). At that time, the claimant's doctor prescribed him insulin, but he reported to the emergency room due to his prescription not being ready (18F/18, 20, 47). The claimant's hemoglobin A1c ranged from 7.4 percent to 7.5 percent (11F/4, 18F/111). At a consultative exam, the examiner noted a history of pre-diabetes; however, the claimant reported that he did not take any medications (10F/1).

Despite the elevated blood sugar readings, there was no diabetic retinopathy on exam (6F/3, 16F/12). Additionally, the claimant's uncorrected visual acuity was 20/50 in his right eye and 20/200 in his left eye (10F/2). The claimant reported numbness and tingling in his

left foot (10F/1, 18F/14, 20F/l). A foot exam revealed some calluses and onychomycosis (19F/15). However, there was no weakness in the claimant's feet (19F/16). In addition, the claimant's sensation remained intact (17Fl41, 234, 18F/3, 4, 15, 19F/16). There was also no evidence of any end organ damage (10F/5).

(PageID.70-72).

## II. Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

As noted above, the ALJ concluded that Plaintiff retained the ability to perform a limited range of sedentary work. Plaintiff argues that for two reasons the ALJ's RFC assessment is not supported by substantial evidence. First, Plaintiff argues that it is difficult for him to "stand for long periods or to walk long distances." The ALJ sufficiently accounted for these particular limitations, however, by limiting Plaintiff to sedentary work with a sit/stand option and only limited standing or walking. To the extent Plaintiff argues that his ability to stand and/or walk is even more limited, such is not supported by the medical evidence. Next Plaintiff argues that, as a result of his diabetes, he is more limited than the ALJ recognized. The

ALJ, however, discussed Plaintiff's diabetes in detail, identifying substantial evidence supporting his RFC assessment. Plaintiff has neither identified contrary evidence nor articulated any error in the ALJ's analysis. Accordingly, this argument is rejected.

### III.   Subsequent Injury

Plaintiff next argues that he is entitled to relief due to injuries he suffered in a fall more than one year *after* the ALJ issued his decision. Specifically, Plaintiff argues that, on June 26, 2019, he fell, dislocating his ankle and breaking his leg. While the Court is not unsympathetic to Plaintiff's injury and the limitations such may impose on Plaintiff, such does not call into question the ALJ's decision.

To obtain disability benefits under Title II, Plaintiff must establish that he was disabled prior to the expiration of his insured status on December 31, 2012. *See Moon*, 923 F.2d at 1182. To obtain disability benefits under Title XVI, Plaintiff must show that he was disabled prior to the ALJ's March 21, 2018 decision. *See Garrett v. Social Security Administration*, 2016 WL 5106972 at *2 n.1 (M.D. Tenn., Sept. 19, 2016). Plaintiff's 2019 injury is a discrete injury that occurred long after the dates by which Plaintiff was obligated to demonstrate his disability. Plaintiff has identified no evidence that his 2019 injury calls into question the ALJ's conclusion that Plaintiff was not disabled as of the dates identified above. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                          Respectfully submitted,

Date:  January 3, 2020                        /s/ Phillip J. Green
                                                    PHILLIP J. GREEN
                                                      United States Magistrate Judge